1  Stephen G. Larson (SBN 145225)
   slarson@larsonllp.com
2  Paul A. Rigali (SBN 262948)
   prigali@larsonllp.com
3  Alix K. Zelener (SBN 340882)
   azelener@larsonllp.com
4  **LARSON LLP**
5  555 South Flower Street, 30th Floor
   Los Angeles, California 90071
6  Telephone:(213) 436-4888
   Facsimile: (213) 623-2000
7
   Howard M. Zelener (SBN 89967)
8  hmzelener@gmail.com
   1749 Sixth Avenue
9  Redlands, CA 92374
   Telephone:  (909) 798-6100
10 Facsimile:   (909) 798-0660
11
   Attorneys for Plaintiffs,
12 Alex Knowles; A Way To Move, Inc.;
   John Bidart; Bidart Dairy II, LLC; Bruce
13 Beretta; Sitka Enterprises, LLC; Rentas E
   Inversiones Los Olivos, Ltda.; Niulpi
14 International SpA; Inversiones Baraja Y
   Compañia Sociedad Colectiva Civil; and
15 Link Nashville Airport Hotel, Inc.

16                    UNITED STATES DISTRICT COURT

17                   CENTRAL DISTRICT OF CALIFORNIA

18

| | |
|---|---|
| 19  ALEX KNOWLES, an individual; A | Case No.   2:24-cv-00675 |
| 20  WAY TO MOVE, INC., a California | |
|     Corporation; JOHN BIDART, an | **COMPLAINT FOR:** |
| 21  individual; BIDART DAIRY II, LLC, a | |
|     California Limited Liability Company; | **(1)  VIOLATION OF SECTION 5** |
| 22  BRUCE BERETTA, an individual; | **OF THE SECURITIES AND** |
| 23  SITKA ENTERPRISES, LLC, a | **EXCHANGE ACT;** |
|     California Limited Liability Company; | **(2)  VIOLATION OF SECTION 12** |
| 24  RENTAS E INVERSIONES LOS | **OF THE 1933 SECURITIES** |
| 25  OLIVOS, LTDA., a Chilean Limited | **ACT;** |
|     Liability Company; NIULPI | |
| 26  INTERNATIONAL SPA, a Chilean | **(3)  VIOLATION OF SECTION 15** |
| 27  Company; INVERSIONES BARAJA Y | **OF THE 1933 SECURITIES** |
|     COMPAÑIA SOCIEDAD | **ACT;** |
| 28                                    | **(4)  VIOLATION OF SECTION 17** |

LARSON
LOS ANGELES

| | | |
|---|---|---|
| 1 | COLECTIVA CIVIL, a Chilean Company; and LINK NASHVILLE AIRPORT HOTEL, INC., a Delaware Corporation, | **OF THE 1933 SECURITIES ACT;** |
| 2 | | **(5) VIOLATION OF SECTION 10(b) OF THE 1934 SECURITIES AND EXCHANGE ACT AND RULE 10b-5;** |
| 3 | | |
| 4 | Plaintiffs, | |
| 5 | | |
| 6 | vs. | **(6) VIOLATION of Cal. Corp. Code §§ 25401 & 25501;** |
| 7 | TAYLOR WOODS, an individual; HOWARD WU aka HOWARD CHORNG JENG WU, an individual; ANNIE WU, an individual; EAGLE NASHVILLE AIRPORT HOTEL, LLC, a Delaware Limited Liability Company; URBAN COMMONS, LLC, a Delaware Limited Liability Company; UNI NASHVILLE AIRPORT HOTEL, LLC, a Delaware Limited Liability Company; SH NASHVILLE, LLC, a Delaware Limited Liability Company; JOHN JENKINS, JR., an individual; DOUGLAS KIEL, an individual; ALEC ROBINSON, an individual; ASAP PROPERTY HOLDINGS, INC., a California Corporation; ASAP INTERNATIONAL HOTEL, LLC, a California Limited Liability Company; FRANK YUAN, an individual; JEROME YUAN, an individual; NORBERT YUAN, an individual; DOES 1 through 10, inclusive, | **(7) VIOLATION of Cal. Corp. Code §§ 2400 & 25500;** |
| 8 | | **(8) VIOLATION of Cal. Corp. Code § 25403;** |
| 9 | | **(9) VIOLATION of Cal. Corp. Code §§ 25503, 25504.1. & 25110;** |
| 10 | | **(10) VIOLATION of Cal. Corp. Code § 25504;** |
| 11 | | **(11) VIOLATION of Cal. Corp. Code §§ 25401 & 25004.1** |
| 12 | | **(12) VIOLATION of Cal. Corp. Code §§ 25200, et seq. & 25501.5;** |
| 13 | | **(13) THEFT BY FALSE PRETENSE (Cal. Penal Code §496(c));** |
| 14 | | **(14) CONSTRUCTIVE FRAUD;** |
| 15 | | **(15) FRAUD – FALSE PROMISE;** |
| 16 | | **(16) FRAUD – CONCEALMENT;** |
| 17 | | **(17) FRAUD – INTENTIONAL MISREPRESENTATION;** |
| 18 | | **(18) NEGLIGENT MISREPRESENTATION;** |
| 19 | | **(19) NEGLIGENCE;** |
| 20 | | **(20) VIOLATION of Cal. Corp. Code §17704.41; and** |
| 21 | | **UNFAIR BUSINESS PRACTICES (Cal. Bus. Code §172000)** |
| 22 | | |
| 23 | Defendants. | |
| 24 | | |
| 25 | | **DEMAND FOR JURY TRIAL** |
| 26 | | |
| 27 | | |
| 28 | | |

LOS ANGELES

2
COMPLAINT

## COMPLAINT

Plaintiffs, Alex Knowles; A Way To Move, Inc.; John Bidart; Bidart Dairy II, LLC; Bruce Beretta; Sitka Enterprises, LLC; Rentas E Inversiones Los Olivos, Ltda.; Niulpi International SpA; Inversiones Baraja Y Compañia Sociedad Colectiva Civil; and Link Nashville Airport Hotel, Inc. (collectively, "Plaintiffs") bring this Complaint against Defendants Taylor Woods; Howard Wu aka Howard Chorng Jeng Wu; Annie Wu, Eagle Nashville Airport Hotel, LLC; Urban Commons, LLC; Uni Nashville Airport Hotel, LLC; SH Nashville, LLC; John Jenkins, Jr.; Douglas Kiel; Alec Robinson: ASAP Property Holdings, Inc.; ASAP International Hotel, LLC; Frank Yuan; Jerome Yuan; Norbert Yuan; Does 1-10, (collectively, "Defendants") and allege as follows:

## INTRODUCTION

1.     This action stems from the unscrupulous, fraudulent and unlawful sales of unregistered and non-exempt securities by Defendants to Plaintiffs. The Defendants misled the Plaintiffs into investing $13,200,000 in 2019 and 2020, falsely promising that the offering would be completed within a few months of their investment. All the while, Defendants knew their parent company was being investigated for securities violations in Singapore. Worse yet, Defendants knew they were in default of a facility loan critical to their ongoing operations. Yet, none of these material facts were disclosed to Plaintiffs.

2.     Plaintiffs allege that all Defendants conspired and committed violations of Federal and California Securities Laws (as defined below) and other statutes, as well as actual and constructive fraud, intentional misrepresentation, and/or negligent misrepresentations, and other torts for which Plaintiffs seek relief and remedies herein.

3.     Plaintiffs seek damages and/or rescission of the securities sale contracts and transactions at issue, with restitution, monies on common counts, and other relief in this action.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction of this action and of the parties pursuant to 28 U.S.C. §§ 1331 and 1332, and by diversity of citizenship. Plaintiffs assert claims herein pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j and 78t], and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], and under 17 C.F.R. § 230. 405. The Exchange Act, and the rules and regulations issued thereunder, including Rule 10b-5, and other relevant Federal securities statutes, regulations and authorities are hereafter collectively referred to as the "Federal Securities Laws."

5.     Defendants, directly or through their agents and representatives, are and have been engaged in regular, continuing and substantial activities, communications, transactions and conduct within this District, throughout California and in other States of the United States.

6.     This Court has pendent, supplemental and ancillary jurisdiction over Plaintiffs' state court claims for relief pursuant to 25 U.S.C. § 1367 in that such claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

7.     Plaintiffs' Federal and California Securities Laws claims, and California statutory and common law claims, are so interrelated and relevant to each other as to constitute the same controversy, dispute and case under Article III of the United States Constitution.

8.     This Court also has jurisdiction by 28 U.S.C. § 1332 based on the complete diversity among the parties, and the amount in controversy exceeds $75,000.00.

9.     Venue is proper in the Central District of California, including under Section27(a) of the Exchange Act [15 U.S.C. § 78aa(a)], and 28 U.S.C. § 1391(b).

## **PARTIES**

10. Plaintiff Alex Knowles is an individual residing in Palos Verdes Estates, California.

11. Plaintiff A Way To Move, Inc. is a California corporation with its principal place of business in Palos Verdes Estates, California

12. Plaintiff John Bidart is an individual residing in Bakersfield, California.

13. Plaintiff Bidart Dairy II, LLC is a California limited liability company with its principal place of business in Bakersfield, California.

14. Plaintiff Bruce Beretta is an individual residing in Bakersfield, California.

15. Plaintiff Sitka Enterprises, LLC is a California limited liability company with its principal place of business in Bakersfield, California.

16. Plaintiff Rentas E Inversiones Los Olivos, Ltda. is a Chilean limited liability company with its principal place of business in Santiago, Chile.

17. Plaintiff Niulpi International SpA is a Chilean company with its principal place of business in Santiago, Chile.

18. Plaintiff Inversiones Baraja Y Compañia Sociedad Colectiva Civil is a Chilean company with its principal place of business in Santiago, Chile.

19. Plaintiff Link Nashville Airport Hotel, Inc. is a Delaware corporation with its principal place of business in Miami, Florida.

20. Plaintiffs are informed and believe and upon such information and belief allege that Defendant Taylor Woods is, and at all relevant times herein was until recently, an individual residing in the State of California, County of Orange, and conducting business in the State of California, County of Los Angeles.

21. Plaintiffs are informed and believe and upon such information and belief allege that Defendant Howard Wu aka Howard Chorng Jeng Wu is, and at all relevant times herein was, an individual residing in the State of California, County of Orange and conducting business in the State of California, County of Los

Angeles.

22.   Plaintiffs are informed and believe and upon such information and belief allege that Defendant Annie Wu is, and at all relevant times herein was, an individual residing in the State of California, County of Orange and conducting business in the State of California, County of Los Angeles

23.   Defendant Eagle Nashville Airport Hotel, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

24.   Defendant Urban Commons, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

25.   Defendant UNI Nashville Airport Hotel, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

26.   Defendant SH Nashville, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California.

27.   Plaintiffs are informed and believe and upon such information and belief allege that Defendant John Jenkins, Jr. (COO) is, and at all relevant times herein was, an individual residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles.

28.   Plaintiffs are informed and believe and upon such information and belief allege that Defendant Douglas Kiel (CFO) is, and at all relevant times herein was, an individual residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles.

29.   Plaintiffs are informed and believe that Defendant Alec Robinson is, and at all relevant times herein was, an individual residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles.

30.   Defendant ASAP Property Holdings, Inc. is a California corporation with its primary place of business in Pasadena, California.

31.     Defendant ASAP International Hotel, LLC is a California limited liability company with its primary place of business in Pasadena, California.

32.     Plaintiffs are informed and believe and upon such information and belief allege that Defendant Frank Yuan is, and at all relevant times herein was, an individual residing in the State of California, county of Los Angeles, and conducting business in the State of California, County of Los Angeles.

33.     Plaintiffs are informed and believe and upon such information and belief allege that Defendant Jerome Yuan is, and at all relevant times herein was, an individual residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles.

34.     Plaintiffs are informed and believe and upon such information and belief allege that Defendant Norbert Yuan is, and at all relevant times herein was, an individual residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles.

35.     Plaintiffs are informed and believe and upon such information and belief allege that DOES 1 through 10, are individuals residing in the State of California, County of Los Angeles, and conducting business in the State of California, County of Los Angeles

36.     Plaintiffs are ignorant of the true names and capacities of Defendants sued as DOES 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names and capacities. Plaintiffs will amend this complaint to allege their true identities when ascertained. Plaintiffs allege that each fictitiously named Defendant is responsible in some manner for the wrongful conduct alleged and for the harm suffered by Plaintiffs.

## **FACTUAL ALLEGATIONS**

37.     In or about September 2019 through June 2020, Defendant Eagle Nashville Airport Hotel, LLC., (hereinafter, "EAGLE NASHVILLE") sought to raise Thirty Five Million Dollars ($35,000,000) by selling membership interests in

EAGLE NASHVILLE (the "Eagle Nashville Offering"). EAGLE NASHVILLE solicited sales by distributing a pamphlet entitled "Hilton Nashville Airport Investment Opportunity" and by a series of phone calls and meetings conducted by Defendant Taylor Woods and Defendant Annie Wu. In the Membership Interest Subscription Agreement provided to each Plaintiff (the "Eagle Nashville Subscription Agreements"), EAGLE NASHVILLE represented that "the funds raised from the offerings will be used to invest in an entity which shall acquire, own, operate and eventually sell that certain property known as the Hilton Nashville Airport, located at 2200 Elm Hill Pike, Nashville, [Tennessee]" (the "Hilton Nashville Airport").

38.     Plaintiffs are informed and believe and upon such information and belief allege that that the entity referenced in the Eagle Nashville Subscription Agreement was Defendant UNI Nashville Airport Hotel, LLC ("UNI NASHVILLE").

39.     At the time of the Eagle Nashville Offering, UNI NASHVILLE was a party to that certain Purchase and Sale Agreement with an effective date of October 23, 2019, by and between UNI NASHVILLE and FWREF Nashville Airport LLC ("Sellers") pursuant to which UNI NASHVILLE agreed to purchase the Hilton Nashville Airport for a purchase price of Seventy Nine Million Dollars ($79,000,000), such purchase to close on or about January 3, 2020 (the "Hotel Purchase Agreement").

40.     Plaintiffs are informed and believe and upon such information and belief allege that at the time of the Eagle Nashville Offering, Defendant Jerome Yuan ("JEROME"), was the sole member (owner) of UNI NASHVILLE and that EAGLE NASHVILLE had no ownership interest in UNI NASHVILLE, nor any enforceable interest to purchase the Hilton Nashville Airport under the Hotel Purchase Agreement or otherwise.

41.     In order to induce Plaintiffs to invest in EAGLE NASHVILLE, Defendants represented to Plaintiffs, among other things that, EAGLE NASHVILLE would sell the Hilton Nashville Airport to the Eagle Hospitality Trust ("EHT") within three to four months. EHT is a hospitality group sponsored by Defendant Urban Commons, LLC ("URBAN COMMONS") and comprised of Eagle Hospitality Real Estate Investment Trust ("EH-REIT") and Eagle Hospitality Business Trust ("EH-BT"). Defendants further represented to Plaintiffs that they would receive a thirty percent (30%) return on their investment.

42.     In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Alex Knowles ("KNOWLES"), by and through Plaintiff A Way To Move, Inc. ("AWTM"), purchased a 22.157% membership interest in Eagle Nashville. Specifically, on or about November 7, 2019, KNOWLES, by and through AWTM executed an Eagle Nashville Subscription Agreement and remitted the purchase price of Four Million Five Hundred Thousand Dollars ($4,500,000) via wire transfer to URBAN COMMONS. A true and correct copy of that Eagle Nashville Subscription Agreement is attached hereto as **Exhibit A**.

43.     In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff John Bidart ("BIDART"), by and through Plaintiff Bidart Dairy II, LLC ("BIDART DAIRY"), purchased a 4.924% membership interest in EAGLE NASHVILLE. Specifically, on or about August 8, 2019, BIDART, by and through BIDART DAIRY executed an Eagle Nashville Subscription Agreement and remitted the purchase price of One Million Dollars ($1,000,000) via wire transfer to URBAN COMMONS. A true and correct copy of that Eagle Nashville Subscription Agreement is attached hereto as **Exhibit B.**

44.     In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Bruce Beretta ("BERETTA"), by and through Plaintiff Sitka Enterprises, LLC ("SITKA"), purchased a 2.857% membership interest in EAGLE NASHVILLE. Specifically, on or about October 10, 2019, BERETTA, by and

through SITKA executed an Eagle Nashville Subscription Agreement and remitted the purchase price of One Million Dollars ($1,000,000) via wire transfer to URBAN COMMONS. A true and correct copy of that Eagle Nashville Subscription Agreement is attached hereto as **Exhibit C.**

45.    In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Rentas E Inversiones Los Olivos, Ltda., ("RENTAS"), purchased a 2.462% membership interest in EAGLE NASHVILLE. RENTAS executed an Eagle Nashville Subscription Agreement and remitted the purchase price of Five Hundred Thousand Dollars ($500,000) via wire transfer to URBAN COMMONS.

46.    In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Niulpi International SpA ("NIUPLI"), purchased a 2.462% membership interest in EAGLE NASHVILLE. NIUPLI executed an Eagle Nashville Subscription Agreement and remitted the purchase price of Five Hundred Thousand Dollars ($500,000) via wire transfer to URBAN COMMONS.

47.    In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Inversiones Baraja Y Compañia Sociedad Colectiva Civil ("INVERSIONES"), purchased a 2.462% membership interest in EAGLE NASHVILLE. Specifically, INVERSIONES executed an Eagle Nashville Subscription Agreement and remitted the purchase price of Five Hundred Thousand Dollars ($500,000) via wire transfer to URBAN COMMONS.

48.    In reliance on the misrepresentations detailed throughout this Complaint, Plaintiff Link Nashville Airport Hotel, Inc., ("LINK NASHVILLE"), purchased a 25.603% membership interest in EAGLE NASHVILLE. Specifically, on or about January 27, 2020, LINK NASHVILLE executed an Eagle Nashville Subscription Agreement and remitted the purchase price of Five Million Two Hundred Thousand Dollars ($5,200,000) via wire transfer to URBAN COMMONS. A true and correct copy of that Eagle Nashville Subscription Agreement is attached

hereto as **Exhibit D.**

49.    The Eagle Nashville Subscription Agreements for each of the Plaintiffs expressly stated that "the Company [EAGLE NASHVILLE] will not use or apply the purchase price until the Company has raised the necessary funds from this offering. The funds raised for the offerings will be used to invest in an entity which shall acquire, own, operate, and eventually sell that certain property known as the Hilton Nashville, located at 2200 Elm Hill Pike, Nashville, Tennessee (the "Property")."

50.    The Eagle Nashville Subscription Agreements further stated that "(i) the purchase price will be deposited into an interest-bearing secure bank account and (ii) all interest earned on such account will be used by the Company to pay all costs and expenses (including, but not limited to, all legal, accounting and management costs and expenses) incurred in connection with this offering and the formation of the Company."

51.    The Eagle Nashville Subscription Agreements further stated that in the event the subscription were terminated, "all funds raised by the Company will be returned to the applicable investors, together with any interest remaining on such funds following the payment of all costs and expenses."

52.    The Eagle Nashville Subscription Agreements further stated that the Company would be obtaining acquisition loans in an approximate aggregate amount of approximately Forty Five Million Dollars ($45,000,000) in order to acquire and refurbish the Property.

53.    Defendants represented that the Eagle Nashville Offering would be completed by the end of 2020.

54.    Plaintiffs are informed and believe and upon such information and belief allege that during the marketing and solicitation of investments in the membership interests of EAGLE NASHVILLE, Defendants misrepresented to Plaintiffs that Defendants had already raised Twenty Five Million Dollars

($25,000,000) from its offering of membership interests in EAGLE NASHVILLE and that WOODS and WU had personally invested their own funds. Neither statement was true when made.

55.     Plaintiffs are informed and believe and upon such information and belief allege that to date, Defendants have not completed their offering for EAGLE NASHVILLE nor have Defendants raised the Thirty Five Million Dollars ($35,000,000) from their offering of membership interests in EAGLE NASHVILLE.

56.     Plaintiffs are informed and believe and upon such information and belief allege that to date, Defendants have not obtained a financing commitment for the acquisition loans in an approximate aggregate amount of Forty Five Million Dollars ($45,000,000) in order to acquire and refurbish the Hilton Nashville Airport.

57.     Plaintiffs are informed and believe and upon such information and belief allege that to date, Defendants have not acquired or refurbished the Hilton Nashville Airport.

58.     Plaintiffs further allege that the securities which URBAN COMMONS sold to Plaintiffs were unregistered in violation of the Securities Act of 1933 and were not exempt from such registration or qualification under the Securities Act of 1933. Therefore, the offer and sale of membership interests by Defendants in EAGLE NASHVILLE violated the Securities Act of 1933 and California Securities Laws.

59.     Plaintiffs are informed and believe and upon such information and belief allege that in or about May 2019, URBAN COMMONS went public on the Singapore Stock Exchange as EAGLEHT. Plaintiffs are informed and believe and upon such information and belief allege that WOODS and WU own 17% of the equity in EAGLEHT and were and/or are Chairman and Deputy Chairman, respectively of the EAGLEHT board.

60.     During the marketing and solicitation of investments in the membership interest of EAGLE NASHVILLE, Defendants further misrepresented that URBAN

1  COMMONS would invest 10-25% of the equity in the purchase of the Hilton

2  Nashville Airport. Plaintiffs are informed and believe and upon such information

3  and belief allege that at the time these misrepresentations were made, Defendants

4  knew these misrepresentations were false and made them in order to induce

5  Plaintiffs into investing in EAGLE NASHVILLE.

6       61.    During the marketing and solicitation of investments in the membership

7  interests of EAGLE NASHVILLE, Defendants misrepresented that the membership

8  interests in EAGLE NASHVILLE would be sold to EAGLEHT by early summer of

9  2020. Plaintiffs are informed and believe and therefore allege that at the time these

10  misrepresentations were made, Defendants knew these misrepresentations were

11  false and made them in order to induce Plaintiffs into investing in EAGLE

12  NASHVILLE.

13       62.    During the marketing and solicitation of investments in the membership

14  interest of EAGLE NASHVILLE, Defendants misrepresented that investment in

15  EAGLE NASHVILLE would yield a significant return on investment. Plaintiffs are

16  informed and believe and therefore allege that at the time these misrepresentations

17  were made, Defendants knew these misrepresentations were false and made them in

18  order to induce Plaintiffs into investing in EAGLE NASHVILLE.

19       63.    Plaintiffs are informed and believe and upon such information and

20  belief allege that at the time Defendants issued its offering of membership interests

21  in EAGLE NASHVILLE to Plaintiffs Defendants knew EAGLEHT was not

22  performing well and failed to disclose this material fact to Plaintiffs. Specifically,

23  Defendants knew that EH-REIT had defaulted on a Three Hundred and Forty-One

24  Million Dollar (US$341,000,000.00) facility loan. Indeed, as Defendants made these

25  written and verbal material misrepresentations between late 2019 and early 2020 to

26  Plaintiffs, Defendants had already defaulted on their US$341,000,000 facility loan

27  and trading of EAGLEHT units was suspended. Plaintiffs are informed and believe

28  and upon such information and belief allege that Defendants' default was caused by

the failure of URBAN COMMONS, the master lessee of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and make timely rental payments. Importantly, this default started in or about December 2019.

64.     Plaintiffs are informed and believe and upon such information and belief allege that at the time Defendants issued their offering of membership interests in EAGLE NASHVILLE to Plaintiffs, Defendants knew EAGLEHT was not performing well, knew EH-REIT had defaulted on its US$341,000,000.00 facility loan, and knew trading of EHT had been suspended, and despite knowing this, Defendants still represented to Plaintiffs that by investing in EAGLE NASHVILLE, there would be no exposure to Singapore market fluctuations or risk.

65.     Further, Plaintiffs are informed and believe and upon such information and belief allege that at the time Defendants issued their offering of membership interests in EAGLE NASHVILLE, Defendants knew they were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT.

66.     Plaintiffs are informed and believe and upon such information and belief allege that as a result of the loan default, trading of EHT units was voluntarily suspended on or about March 24, 2020, while Defendants were still actively marketing and soliciting investments in EAGLE NASHVILLE.

67.     Plaintiffs further allege that during the marketing and solicitation of investments in the membership interests of EAGLE NASHVILLE, Defendants failed to disclose that Defendants had failed to make timely rental payments since 2019 and failed to disclose to Plaintiffs the default by URBAN COMMONS.

68.     Plaintiffs further allege that when Plaintiffs asked Defendants about EH-REIT defaulting on its US$341 million facility loan and EAGLEHT's problems

with the Singapore government, Defendants told Plaintiffs these problems were irrelevant as Defendants had been able to find a new funder for EHT.

69.     Defendants made misrepresentations of material facts and omitted material facts concerning URBAN COMMONS, WOODS, and WU in the offering of the membership interests in EAGLE NASHVILLE. Plaintiffs relied on such misrepresentations in deciding to invest. But for such misrepresentations and material omissions, Plaintiffs would not have invested $13,200,000 (collectively) in EAGLE NASHVILLE.

70.     In sum, in their pitch to solicit the purchase of membership interests in EAGLE NASHVILLE by Plaintiffs, Defendants, by means of written and oral communications, made untrue statements of material facts and omitted to state material facts necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading, including, *inter alia*:

a.     They materially misrepresented and omitted material facts concerning their credentials, experience, expertise, and capabilities in order to induce the trust and confidence of Plaintiffs and other investors and lenders;

b.     They failed to disclose the default by URBAN COMMONS on the Master Lease Agreements with EHT that occurred prior to the offering and EHT's subsequent default and acceleration of its Three Hundred and Forty-One Million Dollar (US$341,000,000.00) loan;

c.     They materially misrepresented the value of the return on investment, claiming the net returns for investors such as Plaintiffs would be "significant" and "repeatable";

d.     They failed to disclose and omitted material facts concerning URBAN COMMONS, WOODS, and WU in the offering of the membership interests;

e.     They materially misrepresented and omitted material facts concerning the completion dates for the offerings and the dates on which the Hilton

Nashville Airport would be sold to EAGLEHT;

f.      They materially misrepresented and omitted material facts concerning raising the necessary funds from the offering of membership interests in order to purchase the Hilton Nashville Airport; and

g.      They materially misrepresented and omitted material facts concerning the status of the investment, acquisition of the Hilton Nashville Airport, and the escrow account allegedly holding Plaintiffs' investment.

71.     Plaintiffs are currently unaware of where their collective $13,200,000 investment went or how it was used by Defendants.

72.     The Eagle Nashville Subscription Agreement expressly provides that should the offering not be completed timely; the investments would be returned to each Plaintiff with interest. Defendants have refused to do so even though they failed to timely complete the offering and/or acquire the Hilton Nashville Airport.

## **ALTER EGOS**

73.     Plaintiffs are informed and believe and upon such information and belief allege that Defendants EAGLE NASHVILLE, URBAN COMMONS, UNI Nashville Airport Hotel, LLC ("UNI NASHVILLE"), SH Nashville, LLC and ("SH NASHVILLE") are shell companies being used as instrumentalities and conduits for a single venture controlled by Defendants WOODS and WU, and Doe Defendants ("DOES") 1 through 10. On information and belief, Plaintiffs allege that URBAN COMMONS, and EAGLE NASHVILLE are the alter egos of WOODS and WU, by reason of the following:

a.      That there exists a unity of interest and ownership between WOODS and WU on the one hand, and EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE, on the other hand, such that any individuality and separateness between WOODS and WU on the one hand and EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE on the other hand, does not exist.

b.     That WOODS and WU exercise complete control and dominance over EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE and, consequently, EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE are mere shells, instrumentalities, and conduits through which WOODS and WU carry on a single enterprise as part of an association-in-fact enterprise.

c.     That WOODS and WU at all times herein mentioned, dominated, influenced and controlled EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE, and any officers or directors other than WOODS and WU, as well as the business, property, and affairs EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE.

d.     That EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE were created and continued pursuant to a fraudulent plan, scheme, and device conceived and operated by WOODS and WU, whereby income, revenue and profits of EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE were diverted to WOODS and WU through their positions as Principals, Managers or Managing Member of such entities.

e.     That, at all times herein mentioned, EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE were organized by WOODS and WU as a device to defraud Plaintiffs of their investment in EAGLE NASHVILLE.

f.     By virtue of the foregoing, adherence to the fiction of the separate corporate existence of EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs may be unable to realize upon any judgment in their favor. Plaintiffs are informed and believe

and thereon allege that, at all times relevant hereto, the individual Defendants WOODS and WU, and entities EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE acted for each other in connection with the conduct herein alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other.

**CONSPIRACY**

74. Defendants WOODS, WU, EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE and Doe Defendants 1 through 100 formed a plan to engage in a conspiracy to commit wrongful conduct, and all agreed to the shared common plan and were each aware that each other planned to participate in the plan and that the plan was unlawful and fraudulent. Plaintiff alleges that to the extent that WOODS, WU, EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE are found to be alter egos of each other, they acted together as one conspiring unit with DOES 1 through 100.

75. As an alternative theory of liability in the event that EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE are not found to be an alter ego of WOODS and WU, then Plaintiffs allege that such non-alter ego entities EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE were separate co-conspirators, *see Webber v. Inland Empire Investments* (1999) 74 Cal. App. 4th 884, 900-01.

76. Defendants Uni Nashville Airport Hotel, LLC ("UNI NASHVILLE LLC"); SH Nashville, LLC ("SH NASHVILLE LLC"); John Jenkins, Jr. ("JENKINS"); Douglas Kiel ("KIEL"); Alec Robinson ("ROBINSON"): ASAP Property Holdings, Inc. ("ASAP HOLDINGS"); ASAP International Hotel, LLC ("ASAP INTERNATIONAL"); Frank Yuan ("FRANK"); Jerome Yuan

("JEROME"); Norbert Yuan ("NORBERT"); and DOES 1-10 aided and abetted the commission of the wrongful conduct alleged in this Complaint by WOODS, WU and URBAN COMMONS.

77.    UNI NASHVILLE LLC, SH NASHVILLE LLC, JENKINS, KIEL, ROBINSON, ASAP HOLDINGS, ASAP INTERNATIONAL, FRANK, JEROME, NORBERT,, and DOES 1-10 knew that the conduct of WOODS, WU and URBAN COMMONS constituted a breach of duty and/or wrongful conduct and provided substantial assistance or encouragement to WOODS, WU and URBAN COMMONS to so act.

UNI NASHVILLE LLC, SH NASHVILLE LLC, JENKINS, KIEL, ROBINSON, ASAP HOLDINGS, ASAP INTERNATIONAL, FRANK, JEROME, NORBERT, , and DOES 1-10 aided and abetted the commission of the wrongful conduct alleged in this Complaint by WOODS, WU and URBAN COMMONS.

## **FIRST CAUSE OF ACTION**

### **(Violation of Section 5 of the Securities and Exchange Act Against All Defendants, and Does 1 through 10, Inclusive)**

78.    Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 77 and reallege those allegations as if fully set forth herein.

79.    By engaging in the conduct described above, Defendants, directly or indirectly, singly and in concert: (i) made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise; (ii) carried securities or caused such securities to be carried through the mails or the interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale; and/or (iii) made use of the means or instruments of transportation or communication in interstate commerce or of the mails offer to sell or offer to buy securities, through the use or medium of any prospectus or otherwise.

80.     No registration statement was filed or was in effect with the Securities Exchange Commission ("SEC") pursuant to the Securities Act, and no exemption from registration exists with respect to the offering and sale of securities to Plaintiffs described herein.

81.     By reason of the foregoing, Defendants violated Section 5 of the Securities and Exchange Act.

## SECOND CAUSE OF ACTION

### (Violation of Section 12 of the Securities and Exchange Act Against All Defendants, and Does 1 through 100, Inclusive)

82.     Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 81 and reallege those allegations as if fully set forth herein.

83.     Defendants sold the securities described herein in violation of Section 5 of the Securities act and are therefore jointly and severally liable under Section 12 of the Securities Act.

84.      Defendants also offered and sold securities using interstate commerce or the mails by the means of oral communication, which included untrue statements of material facts or omitted to state a material fact necessary in order to make the statements in light of the circumstances under which they were made not misleading, and are therefore liable under Section 12 of the Securities Act.

## THIRD CAUSE OF ACTION

### ((Violation of Section 15 of the Securities and Exchange Act Against WOODS, and WU, and Does 1 through 10, Inclusive)

85.     Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 84 and reallege those allegations as if fully set forth herein.

86.     WOODS and WU are control persons within the meaning of Section 15 of the Securities Act and are therefore jointly and severally liable for the violations by EAGLE NASHVILLE, URBAN COMMONS, UNI NASHVILLE and SH NASHVILLE of Sections 5 and 12 of the Securities Act.

## FOURTH CAUSE OF ACTION

### ((Violation of Section 17 of the Securities and Exchange Act Against All Defendants, and Does 1 through 10, Inclusive)

87. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 86 and reallege those allegations as if fully set forth herein.

88. In the offer and sale of securities to Plaintiffs, Defendants employed devices, schemes, and artifices to defraud Plaintiffs as described herein.

89. In the offer and sale of securities to Plaintiffs, as described in detail herein, Defendants made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made in the light of the circumstances under which they were made, not misleading.

90. In the offer and sale of securities to Plaintiffs, as described in detail herein, Defendants engaged in transactions, practice or a course of business which operated as a fraud and deceit on Plaintiffs.

91. Defendants are therefore liable under Section 17 of the Securities Act.

## FIFTH CAUSE OF ACTION

### (Violation of Section 10(b) of the 1934 Securities and Exchange Act and Rule 10b-5 Against All Defendants and Does 1 through 10, Inclusive)

92. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 91 and reallege those allegations as if fully set forth herein.

93. Defendants and each of them, by engaging in the conduct described herein knowingly, recklessly, or negligently, directly or indirectly, in connection with the purchase or sale of a security, by the use of means or instrumentalities of interstate commerce or of the mails, with scienter, violated Section 10(b) and Rule 10b-5 by: (i) employing devices, schemes, and artifacts to defraud; (ii) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (iii) engaging in acts, practices and a course of

business pursuant to which they knowingly or recklessly engaged in acts that operated as a fraud or deceit upon Plaintiffs in connection with its offer and sale of securities to Plaintiffs.

94. Plaintiffs were induced to purchase Defendants' securities as a direct and proximate result of Defendants' fraud, deceit, misleading statements, concealments of material facts and other conduct which constitute(s), separately and together, violations of the Exchange Act as alleged.

95. Plaintiffs reasonably and justifiably relied upon the representations, promises and other statements, communications and conduct by Defendants in investing in EAGLE NASHVILLE.

96. Plaintiffs were ignorant of, and Defendants concealed from Plaintiffs, and did not disclose to Plaintiffs, material facts which were necessary to prevent the fraud, deceit and other violations of the Exchange Act by Defendants. Defendants prevented Plaintiffs from discovering the true facts as to Defendants' illegal and wrongful actions and the damages caused Plaintiffs.

97. By engaging in the conduct described in this Complaint, Defendants, and each of them, have violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)], and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder, in each and all Securities Transactions, including offers and sales of EAGLE NASHVILLE securities, with and to Plaintiffs as alleged.

98. Plaintiffs have sustained damages in sums to be determined according to proof, but exceeding the jurisdictional threshold of this Court.

99. Plaintiffs are entitled to recover their economic and other compensatory damages from Defendants, and each of them, according to proof, together with pre- and post- judgment interest, attorneys' fees, experts' fees and costs.

100. Plaintiff's damages include, without limitation, the principal sum of $13,200,000 which Plaintiffs paid collectively to purchase EAGLE NASHVILLE securities and other compensatory and consequential damages.

101.   Defendants, and each of them, have acted with oppression, fraud and malice in the matters herein alleged, for which Plaintiffs are entitled to recover punitive and exemplary damages from each and all Defendants.

## SIXTH CAUSE OF ACTION

**(Violation of California Corporations Code §§ 25401 and 25501 Against All Defendants and Does 1 through 10, Inclusive)**

102.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 101 and reallege those allegations as if fully set forth herein.

103.   It is unlawful for any person to offer or sell a security in the State of California by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading. Cal. Corp. Code § 25401.

104.   Any person who violates California Corporations Code § 25401 is liable to the person who purchased a security from him, who may sue either for rescission or for damages (if the plaintiff or the Defendant, as the case may be, no longer owns the security), unless the Defendant proves that the plaintiff knew the facts concerning the untruth or omission or that the Defendant exercised reasonable care and did not know (or if he had exercised reasonable care would not have known) of the untruth or omission. Upon rescission, a purchaser may recover the consideration paid for the security, plus interest at the legal rate, less the amount of any income received on the security, upon tender of the security. Cal. Corp. Code § 25501.

105.   As set forth in this Complaint, Defendants offered to sell membership interests to Plaintiffs in EAGLE NASHVILLE in the by means of written and oral communications that included untrue statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they statements were made, not misleading.

106.   Defendants offered to sell those membership interests in EAGLE NASHVILLE.

107.   The membership interest in EAGLE NASHVILLE offered to be sold by Defendants constituted unregistered securities.

108.   Plaintiffs all purchased securities from Defendants in EAGLE NASHVILLE.

109.   Plaintiffs herein sue EAGLE NASHVILLE for rescission of the purchase by Plaintiffs and sale by Defendants of the membership interests in EAGLE NASHVILLE purchased by the Plaintiffs and sold by Defendants, and to recover the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

## SEVENTH CAUSE OF ACTION

**(For Violations of California Corporations Code §§ 25400 & 25500 (Against All Defendants and Does 1 through 10, Inclusive)**

110.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 109 and reallege those allegations as if fully set forth herein.

111.   In the misrepresentations and other wrongful and illegal conduct by Defendants herein alleged, including in the solicitations, offers and sales of securities to Plaintiffs, Defendants each and all violated Corporations Code Section 25400.

112.   Defendants, and each of them, misrepresented the values and risks of investing in the proffered securities and made other false and misleading statements and engaged in other conduct which violate, individually and in aggregate, Corporations Code Section 25400.

113.   As provided in Corporations Code Section 25500, and as a result of Defendants' violations of Corporations Code Section 25400, Plaintiffs are entitled to damages and other relief.

114. Plaintiffs pray for damages pursuant to Corporations Code Section 25500, including the sum of $13,200,000 paid by Plaintiffs for securities in EAGLE NASHVILLE, together with interest accruing at the legal rate, including other compensatory and consequential damages, and punitive and exemplary damages.

115. Plaintiffs also pray for recovery of such other damages as may be proven and recoverable, including under Corporations Code Section 25500 and other applicable California Securities Laws.

116. Alternatively, or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $13,200,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof, including attorneys' fees and costs, and other compensatory and consequential damages and punitive and exemplary damages.

## EIGHTH CAUSE OF ACTION

### (For Violations of California Corporations Code § 25403 Against WOODS and WU)

117. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 116 and reallege those allegations as if fully set forth herein.

118. Defendants WOODS and WU are jointly and severally liable for EAGLE NASHVILLE's violations of the California Corporations Code as they are either control persons of EAGLE NASHVILLE and knowingly induced the violations described in the Complaint, or they provided substantial assistance in the violations of the California Corporations Code as described in this Complaint.

///
///
///
///

## NINTH CAUSE OF ACTION

**(For Violations of California Corporations Code §§ 25503, 25504.1 & 25110**

**Against All Defendants and Does 1 through 10, Inclusive)**

119.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 118 and reallege those allegations as if fully set forth herein.

120.   Defendants have solicited, offered and sold securities in EAGLE NASHVILLE without qualifying said securities for sale in California, including as issuer transactions, as required by Corporations Code Section 25110, et seq., including in the offer and sale of securities to Plaintiffs.

121.   Defendants' offers and sales of securities in EAGLE NASHVILLE were not exempt from qualification under Corporations Code Section 25110, or other provisions of the California Securities Laws.

122.   By the foregoing, each and all Defendants have violated Corporations Code Section 25110, thereby entitling Plaintiffs to recover damages and other relief, including under Corporations Code Sections 25503 and 25504.1.

123.   Plaintiffs pray for damages pursuant to Corporations Code Sections 25503 and 25504.1, including the sum of $13,200,000 paid by Plaintiffs for securities in EAGLE NASHVILLE, together with interest accruing at the legal rate.

124.   Plaintiffs also pray for recovery of such other damages as may be proven and recoverable under Corporations Code Sections 25503 and 25504.1, including attorneys' fees and costs, as well as other compensatory and consequential damages and punitive and exemplary damages.

125.   Alternatively, or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $12,300,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof.

LARSON
LOS ANGELES

**TENTH CAUSE OF ACTION**

**(Violation of California Corporations Code §25504 Against All Defendants and Does 1 through 10, Inclusive)**

126.  Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 125 and reallege those allegations as if fully set forth herein.

127.  Every person who directly or indirectly controls a person liable under California Corporations Code § 25501, every partner in a firm so liable, every principal executive officer or director of a corporation so liable, every person occupying a similar status or performing similar functions, every employee of a person so liable who materially aids in the act or transaction constituting the violation, and every broker-dealer or agent who materially aids in the act or transaction constituting the violation, are also liable jointly and severally with and to the same extent as such person, unless the other person who is so liable had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability is alleged to exist. Cal. Corp. Code § 25504.

128.  Additionally, any person who materially assists in any violation of California Corporations Code § 25501, with intent to deceive or defraud, is jointly and severally liable with any other person liable for such violation. Cal. Corp. Code. § 25504.1.

129.  WOODS directly and indirectly controls EAGLE NASHVILLE and URBAN COMMONS. WOODS is a principal executive officer and director of EAGLE NASHVILLE and URBAN COMMONS, or occupies a similar status and performs similar functions as a principal executive officer or director of, and a partner in, EAGLE NASHVILLE and URBAN COMMONS. WOODS is also an employee and agent of EAGLE NASHVILLE and URBAN COMMONS who materially aided and assisted in the acts and transactions constituting the violation by EAGLE NASHVILLE and URBAN COMMONS of California Corporations Code § 25401, and did so with the intent to deceive and defraud, incurring liability

of EAGLE NASHVILLE and URBAN COMMONS to Plaintiffs under California Corporations Code § 25501, as set forth in this Complaint. WOODS had knowledge of and reasonable grounds to believe in the existence of the facts by which the liability of EAGLE NASHVILLE and URBAN COMMONS, under California Corporations Code §§ 25401 and 25501, is alleged to exist. WOODS is jointly and severally liable therefor, with and to the same extent as EAGLE NASHVILLE and URBAN COMMONS.

130.    WU directly and indirectly controls EAGLE NASHVILLE and URBAN COMMONS. WU is a principal executive officer and director of EAGLE NASHVILLE and URBAN COMMONS, or occupies a similar status and performs similar functions as a principal executive officer or director of, and a partner in, EAGLE NASHVILLE and URBAN COMMONS. WU is also an employee and agent of EAGLE NASHVILLE and URBAN COMMONS who materially aided and assisted in the acts and transactions constituting the violation by EAGLE NASHVILLE and URBAN COMMONS of California Corporations Code § 25401, and did so with the intent to deceive and defraud, incurring liability of EAGLE NASHVILLE and URBAN COMMONS to Plaintiffs under California Corporations Code § 25501, as set forth in this Complaint. WU had knowledge of and reasonable grounds to believe in the existence of the facts by which the liability of EAGLE NASHVILLE and URBAN COMMONS, under California Corporations Code §§ 25401 and 25501, is alleged to exist. WU is jointly and severally liable therefor, with and to the same extent as EAGLE NASHVILLE and URBAN COMMONS.

131.    Each of WOODS, WU and URBAN COMMONS transmitted, caused to be transmitted, delivered, caused to be delivered, or caused to be disseminated to Plaintiffs materially untrue statements and omissions of material fact as alleged in this Complaint.

132.    As a direct and proximate result thereof, Plaintiffs have suffered damages and are entitled to rescission of their purchase of membership interest in

1   EAGLE NASHVILLE. Each of WOODS, WU and URBAN COMMONS are

2   jointly and severally liable with EAGLE NASHVILLE therefor, with and to the

3   same extent as EAGLE NASHVILLE.

**ELEVENTH CAUSE OF ACTION**

**(Violation of California Corporations Code §§ 25401 & 25504.1 Against All
Defendants and Does 1 through 10, Inclusive)**

7   133.   Plaintiffs hereby incorporate each and every allegation contained in

8   paragraphs 1 through 132 and reallege those allegations as if fully set forth herein.

9   134.   Defendants, through their Conspiracy and otherwise, materially

10  participated and joined in the offers and sales of securities in California, including to

11  Plaintiffs, by means of false, fraudulent and misleading oral and written

12  representations including documents intended to induce and solicit Plaintiffs'

13  purchase of securities in EAGLE NASHVILLE.

14  135.   Defendants intended to mislead, deceive and defraud Plaintiffs in said

15  offers and sales of securities in EAGLE NASHVILLE, including through

16  Defendants' representations, Conspiracy and other conduct as described herein.

17  136.   Defendants each had full knowledge of the false, misleading, fraudulent

18  and deceitful representations being made to Plaintiffs, including through the

19  communications from Defendants to Plaintiffs as alleged.

20  137.   Defendants each disseminated the solicitation and offering documents

21  and information to Plaintiffs with the intent of misleading, deceiving and defrauding

22  Plaintiffs and to induce Plaintiffs to purchase securities in EAGLE NASHVILLE.

23  138.   Each Defendant knowingly intended that Plaintiffs would rely on the

24  promises and other representations being made by Defendants to Plaintiffs to induce

25  Plaintiffs' purchase of securities in EAGLE NASHVILLE.

26  139.   Each Defendant intended that Plaintiffs would pay, and in justifiable

27  reliance on Defendants' misleading, false and fraudulent statements and

28  concealments of material information, Plaintiffs did pay to Defendants for securities

in EAGLE NASHVILLE the total sum of $13,200,000.

140. By the foregoing, each and all Defendants have violated Corporations Code Section 25401, including derivatively, thereby entitling Plaintiffs to recover damages and other relief under Corporations Code Section 25504.1, as well as punitive and exemplary damages.

141. Plaintiffs pray for damages pursuant to Corporations Code Section 25504, including the sum of $13,200,000 paid by Plaintiffs in the purchase of securities in EAGLE NASHVILLE, together with interest accruing at the legal rate.

142. Plaintiffs also pray for recovery of such other damages as may be proven and recoverable, including under Corporations Code Sections 25401 and 25504.1, including other compensatory and consequential damages.

143. Alternatively or in combination, as authorized by applicable provisions of the California Securities Laws, including in Corporations Code Section 25000, et seq., Plaintiffs seek and apply for rescission of the securities transactions alleged and for restitution of the entire $13,200,000 principal sum paid by Plaintiffs, with interest at the legal rate, and other damages according to proof, including other compensatory and consequential damages and punitive and exemplary damages.

## TWELFTH CAUSE OF ACTION

**(Violation of California Corporations Code §§ 25200, et seq. & 25501.5 Against All Defendants and Does 1 through 10, Inclusive)**

144. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 143 and reallege those allegations as if fully set forth herein.

145. At the times of the solicitations, offers and sales of the securities in EAGLE NASHVILLE to Plaintiffs, none of the Defendants were licensed as securities broker dealer(s) as required by Part 3 of the Corporations Code, Section 25200, et seq.

146. Plaintiffs hereby rescind and tender back to EAGLE NASHVILLE and to the other Defendants, the securities sold to and purchased by Plaintiffs, as

provided in Corporations Code Section 25501.5.

147.   Defendants further are liable to restore and return to Plaintiffs, and Plaintiffs hereby seek and apply for restitution of all consideration paid by Plaintiffs for the securities purchased in EAGLE NASHVILLE, in the sum of $13,200,000, together with interest at the legal rate.

148.   Plaintiffs further seek recovery of additional damages according to proof, including under Corporations Code Section 25501.5, and other compensatory and consequential damages.

149.   Plaintiffs further are entitled to recoveries and other relief pursuant to California Code of Civil Procedure Section 1029.8 due to the injury, loss and damages caused to Plaintiffs by Defendants, who are unlicensed persons who solicited, purported to provide advice to Plaintiffs and who conducted and directed the offer and sales of securities to Plaintiffs.

150.   By virtue of Defendants' failure to be licensed in the foregoing transactions and activities as legally required, Plaintiffs, accordingly, are entitled to recover from Defendants, under Code of Civil Procedure Section 1029.8(a), without limitation of Plaintiffs' other remedies, additional damages for "treble the amount of damages assessed in a civil action in any court having proper jurisdiction." The additional damages shall not exceed $10,000.00 under Section 1029.8(c).

151.   Plaintiffs further pray, under Code of Civil Procedure Section 1029.8(a), for recovery of Plaintiffs' costs and attorneys' fees in this action and if Plaintiffs prevail herein. Plaintiffs respectfully contend that such award would be a proper exercise of this Court's discretion pursuant to the foregoing statute.

## THIRTEENTH CAUSE OF ACTION

### (Theft By False Pretense – California Penal Code §496(c), Against All Defendants and Does 1 through 10, Inclusive)

152.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 151 and reallege those allegations as if fully set forth herein.

153.    Defendants obtained $13,200,000 from Plaintiffs under false pretenses. More specifically, as part of their offering and sale of securities in EAGLE NASHVILLE, Defendants represented to Plaintiffs that: (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) EAGLE NASHVILLE would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Hilton Nashville Airport; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for EAGLE NASHVILLE would be completed by spring 2020; (vii) EAGLE NASHVILLE would obtain loans in an approximate aggregate amount of $40,000,000 the Hilton Nashville Airport; and (viii) the Hilton Nashville Airport would be sold to EAGLEHT by early summer 2020.

154.    At the time Defendants made these representations, Defendants were well aware that EAGLEHT was not performing well, Defendants knew that EH-REIT had defaulted on a $341 million facility loan, and that the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019. Defendants further knew that they were under investigation by the Monetary Authority of Singapore (MAS) and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT and that trading of EHT's units had been suspended.

155.   Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment in an act of theft.

156.   Under these false pretenses, which were unbeknownst to Plaintiffs at the time, Plaintiffs all invested in EAGLE NASHVILLE.

157.   The theft amounted to $13,200,000. Under Penal Code Section 496(c), Plaintiffs are entitled to three times the amount of actual damages, costs of suit, and its reasonable attorneys' fees.

## FOURTEENTH CAUSE OF ACTION

**(Constructive Fraud Against All Defendants and Does 1 through 100, Inclusive)**

158.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 157 and reallege those allegations as if fully set forth herein.

159.   A relation of trust and confidence existed between Defendants on the one hand and Plaintiffs on the other hand.

160.   Defendants engaged in various acts, omissions, and concealment involving breaches of the above duties and trust and confidence placed in Defendants by Plaintiffs, including that they failed to disclose to Plaintiffs that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by Urban Commons' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

161.   Specifically, Defendants represented to Plaintiffs that (i) previous investments with Urban Commons had earned a cash on cash return of 30% in three and one-half months; (ii) EAGLE NASHVILLE would not use or apply the

purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Hilton Nashville Hotel; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Eagle Nashville Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for EAGLE NASHVILLE would be completed by March 6, 2020; (vii) EAGLE NASHVILLE would obtain loans in an approximate aggregate amount of $40,000,000 to acquire the Hilton Nashville Hotel; and (viii) the Hilton Nashville Hotel would be sold to EAGLEHT by early summer 2020. Each of these representations were false, was known by their makers to be false at the time made, and induced the Plaintiffs' justifiable reliance on Defendants when they made an investment in EAGLE NASHVILLE.

162. Plaintiffs did not know of Defendants' acts, omissions, and concealment.

163. Plaintiffs reasonably and actually relied upon the acts, omissions and concealment by Defendants.

164. Plaintiffs were harmed by Defendants' acts, omissions, and concealment in that had the important facts been disclosed to Plaintiffs, Plaintiffs would have taken steps, including not investing in EAGLE NASHVILLE.

165. Defendants' breach of their duties and of the confidence and trust placed in them by Plaintiffs was a substantial factor in causing Plaintiffs' harm.

166. In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights,

including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an example of them to the community.

## FIFTEENTH CAUSE OF ACTION

### (Fraud-False Promise Against All Defendants and Does 1 through 100, Inclusive)

167.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 166 and reallege those allegations as if fully set forth herein.

168.    In or about January 2020 and February 2020, Defendants engaged in a private offering for EAGLE NASHVILLE. The offering for EAGLE NASHVILLE was for up to $35,000,000. As part of this offering, Defendants promised that: (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) EAGLE NASHVILLE would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the respective offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Hilton Nashville Airport; (iv) the purchase price for each property would be deposited into interest-bearing secure bank accounts; (v) if the Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for EAGLE NASHVILLE would be completed by March 6, 2020; (vii) EAGLE NASHVILLE would obtain loans in an approximate aggregate amount of $40,000,000 to acquire the Hilton Nashville Airport; and (viii) the Hilton Nashville Airport would be sold to EAGLEHT by early summer 2020. These promises were important to the establishment of the business relationship between Plaintiffs and Defendants.

169.  Defendants did not intend to perform their promises when such promises were made.

170.  Defendants intended for Plaintiffs to rely on their promises to obtain funding from Plaintiffs.

171.  Plaintiffs reasonably relied on Defendants' promises and proceeded to invest in EAGLE NASHVILLE. Defendants did not perform the promised acts. Defendants never honored their obligations under the Eagle Nashville Subscription Agreements. As a result, Defendants failed to: (i) complete the offering for EAGLE NASHVILLE; (ii) obtain financing commitments for the acquisition loans in an approximate aggregate of $40,000,000 in order to acquire and refurbish the Hilton Nashville Airport; (iii) purchase and refurbish the Nashville Hotel; and (iv) return to Plaintiffs their initial investments totaling $13,200,000.

172.  Plaintiffs were harmed by Defendants' failure to perform their promises. Plaintiffs invested in EAGLE NASHVILLE, and received nothing in return, leaving Plaintiffs out of pocket $13,200,000. Additionally, Plaintiffs have incurred and will incur additional expenses, including attorneys' fees and costs. Plaintiffs seek rescission of the Eagle Nashville Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

173.  Plaintiffs' reliance on Defendants' promises was a substantial factor in causing Plaintiffs' harm.

174.  In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the

acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an example of them to the community.

## SIXTEENTH CAUSE OF ACTION

### (Fraud-False Promise Against All Defendants and Does 1 through 10, Inclusive)

175. Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 174 and reallege those allegations as if fully set forth herein.

176. Defendants, to induce Plaintiffs to invest in EAGLE NASHVILLE, failed to disclose important facts, including that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

177. Plaintiffs did not know of the concealed facts.

178. Defendants intended to deceive Plaintiffs and cause Plaintiffs to invest in EAGLE NASHVILLE by concealing such facts.

179. Plaintiffs reasonably and actually relied on Defendants' deceptions.

180. Plaintiffs were harmed by Defendants' concealment in that had the important facts been disclosed, Plaintiffs would never have invested in EAGLE NASHVILLE pursuant to the Eagle Nashville Offering. Defendants' concealment of important facts has caused injury and damage to Plaintiffs of at least $13,200,000. Plaintiffs seek rescission of the Eagle Nashville Offering and are entitled to

1  "complete relief" including "restitution of benefits" and "any consequential

2  damages." (Cal. Civ. Code §1692.)

3    181.  Defendants' concealment was a substantial factor in causing Plaintiffs'

4  harm.

5    182.  In committing the acts herein, Defendants are guilty of oppression

6  (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in

7  conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations,

8  deceit, and concealment of material facts known to Plaintiffs with the intention on

9  the part of Defendants of thereby depriving Plaintiffs of monies and legal rights,

10  including, and otherwise causing injury), malice (conduct intended by said

11  Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the

12  acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code

13  Section 3294, in a sum appropriate to punish Defendants and to deter similar future

14  misconduct and to make an example of them to the community.

## SEVENTEENTH CAUSE OF ACTION

### (Intentional Misrepresentation Against All Defendants and Does 1 through 10, Inclusive)

18    183.  Plaintiffs hereby incorporate each and every allegation contained in

19  paragraphs 1 through 182 and reallege those allegations as if fully set forth herein.

20    184.  Defendants misrepresented an essential material fact. As part of their

21  offer and sale of securities in EAGLE NASHVILLE to Plaintiffs, Defendants

22  promised that: (i) previous investments with URBAN COMMONS had earned a

23  cash on cash return of 30% in three and one-half months; (ii) EAGLE NASHVILLE

24  would not use or apply the purchase price until the necessary funds from the

25  offerings had been raised; (iii) the funds raised for the respective offerings would be

26  used to invest in entities which would acquire, own, operate, and eventually sell the

27  Hilton Nashville Airport; (iv) the purchase price for each property would be

28  deposited into interest-bearing secure bank accounts; (v) if the Eagle Nashville

Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all costs and expenses; (vi) the offering for EAGLE NASHVILLE would be completed by March 6, 2020; (vii) EAGLE NASHVILLE would obtain loans in an approximate aggregate amount of $40,000,000 to acquire the Hilton Nashville Airport; and (viii) the Hilton Nashville Airport would be sold to EAGLEHT by early summer 2020.

185.   At the time Defendants made this representation, Defendants knew that such representations were false, as Defendants were well aware that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by Urban Commons' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

186.   Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment.

187.   Plaintiffs reasonably relied on Defendants' representations, having no reason to believe that they would not receive back their initial investments, and as such, proceeded to invest in the Eagle Nashville Offering.

188.   Plaintiffs were harmed by Defendants' misrepresentations. Plaintiffs invested in EAGLE NASHVILLE, and Plaintiffs received nothing in return, causing injury and damage to Plaintiffs of at least $13,200,000. Plaintiffs seek rescission of the Eagle Nashville Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

189.   Plaintiffs' reliance on Defendants' misrepresentations was a substantial factor in causing Plaintiffs' harm.

190.   In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an example of them to the community.

## EIGHTEENTH CAUSE OF ACTION

### (Negligent Misrepresentation Against All Defendants and Does 1 through 10, Inclusive)

191.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 190 and reallege those allegations as if fully set forth herein.

192.   Defendants misrepresented an essential material fact. As part of their offer and sale of securities in EAGLE NASHVILLE to Plaintiffs, Defendants promised that (i) previous investments with URBAN COMMONS had earned a cash on cash return of 30% in three and one-half months; (ii) EAGLE NASHVILLE would not use or apply the purchase price until the necessary funds from the offerings had been raised; (iii) the funds raised for the offerings would be used to invest in entities which would acquire, own, operate, and eventually sell the Hilton Nashville Airport; (iv) the purchase price for the property would be deposited into interest-bearing secure bank accounts; (v) if the Eagle Nashville Subscription Agreements were terminated, all funds raised would be returned to the investors, together with any interest remaining on such funds following the payment of all

costs and expenses; (vi) the offering for EAGLE NASHVILLE would be completed by March 6, 2020; (vii) EAGLE NASHVILLE would obtain loans in an approximate aggregate amount of $40,000,000 to acquire the Hilton Nashville Airport; and (viii) the Hilton Nashville Airport would be sold to EAGLEHT by early summer 2020.

193.   At the time Defendants made this representation, Defendants knew that such representations were false, as Defendants were well aware that: (i) EAGLEHT was not performing well, (ii) EH-REIT had defaulted on a $341 million facility loan, (iii) the default on the loan was caused by URBAN COMMONS' failure, as master lessee, of EHT's properties, to place with EHT the full sum of security deposits due under the master lease agreements and timely pay rent since December 2019; (iv) Defendants were under investigation by the Monetary Authority of Singapore ("MAS") and the Singapore Exchange for suspected breaches of disclosure requirements under Section 203 of the Singapore Securities and Futures Act, and breaches of regulations and listing rules in relation to EH-REIT; and (v) trading of EHT's units had been suspended.

194.   Defendants intended for Plaintiffs to rely on the representations to obtain funding through Plaintiffs' investment.

195.   Plaintiffs reasonably relied on Defendants' representations, having no reason to believe that they would not receive back their initial investments, and as such, proceeded to provide invest in the Eagle Nashville.

196.   Plaintiffs were harmed by Defendants' misrepresentations. Plaintiffs invested in EAGLE NASHVILLE, and Plaintiffs received nothing in return, causing injury and damage to Plaintiffs of at least $13,200,000. Such damages include DR. ROSEN's $250,000 investment in Eagle Nashville. Plaintiffs seek rescission of the Eagle Nashville Offering and are entitled to "complete relief" including "restitution of benefits" and "any consequential damages." (Cal. Civ. Code §1692.)

197.   Plaintiffs' reliance on Defendants' misrepresentation was a substantial factor in causing Plaintiffs' harm.

198.   In committing the acts herein, Defendants are guilty of oppression (despicable conduct that subjected Plaintiffs to cruel and unjust hardship in conscious disregard of Plaintiffs' rights), fraud (intentional misrepresentations, deceit, and concealment of material facts known to Plaintiffs with the intention on the part of Defendants of thereby depriving Plaintiffs of monies and legal rights, including, and otherwise causing injury), malice (conduct intended by said Defendants to cause injury to Plaintiffs), and authorized ratified, or performed the acts, justifying an award of exemplary and punitive damages, pursuant to Civil Code Section 3294, in a sum appropriate to punish Defendants and to deter similar future misconduct and to make an example of them to the community.

## NINETEENTH CAUSE OF ACTION

### (Negligence Against All Defendants and Does 1 through 10, Inclusive)

199.   Plaintiffs hereby incorporate each and every allegation contained in paragraphs 1 through 198 and reallege those allegations as if fully set forth herein.

200.   Based on their relationship with Plaintiffs, Defendants owed a duty of care to Plaintiffs.

201.   Each of the Defendants engaged in gross negligence in that their conduct—and lack thereof—failed to exercise the barest minimum of care and departed from the ordinary standard of care under the circumstances in their dealings with Plaintiffs, to Plaintiffs' detriment.

202.   Each of the Defendants also engaged in negligence in that they failed to exercise reasonable care under the circumstances in their dealings with Plaintiffs, to Plaintiffs' detriment.

203.   As a proximate result of such negligence on the part of Defendants, Plaintiffs have suffered damages in an amount to be established at trial, but which are in excess of $13,200,000.

LARSON
LOS ANGELES

1

<u>**TWENTIETH CAUSE OF ACTION**</u>

2      204.   Plaintiffs hereby incorporate each and every allegation contained in

3  paragraphs 1 through 203 and reallege those allegations as if fully set forth herein.

4      205.   The members of EAGLE NASHVILLE residing in California represent

5  twenty five percent (25%) or more of the voting interests of the members of EAGLE

6  NASHVILLE.

7      206.   EAGLE NASHVILLE is a manager–managed limited liability

8  company.

9      207.   Plaintiffs are entitled to all information and inspection rights with

10 respect to EAGLE NASHVILLE as provided in California Corporations Code §

11 17704.10.

12      208.   Proper demand was made by the Information Request upon EAGLE

13 NASHVILLE for information and inspection pursuant to California Corporations

14 Code §17704.10.

15      209.   Plaintiffs seek an order of the Court requiring Defendants to provide all

16 information and permit the inspection in its entirety as requested by the Information

17 Request, pursuant to California Corporations Code § 17704.10.

18

<u>**TWENTY-FIRST CAUSE OF ACTION**</u>

19

**(Violation of California Business & Professions Code Section 17200, et seq.**

20

**Against All Defendants and Does 1 through 10 Inclusive)**

21      210.   Plaintiffs hereby incorporate each and every allegation contained in

22 paragraphs 1 through 209 and reallege those allegations as if fully set forth herein.

23      211.   Defendants have committed unlawful, unfair and fraudulent business

24 activities and practices in their offering and selling of securities to Plaintiffs.

25      212.   By such conduct, Defendants, and each of them, have violated

26 California Business & Professions Code Section 17200, et seq. Defendants'

27 violations have continued throughout their business in California and to present

28 date, including when Defendants misled and defrauded Plaintiffs into purchasing

1   securities in EAGLE NASHVILLE.

2   213.   As a direct and proximate result of Defendants' unfair, unlawful and

3   fraudulent business practices in violation of Business & Professions Code Section

4   17200, as alleged, Plaintiffs are entitled to, and hereby seek, (a) rescission of

5   Plaintiffs' purchases of securities in EAGLE NASHVILLE, as alleged, and (b)

6   restitution to Plaintiffs of all monies which Plaintiffs have paid for purchase of

7   securities in EAGLE NASHVILLE, i.e., the sum of $13,200,000.

8   **PRAYER FOR RELIEF**

9   WHEREFORE, Plaintiffs pray for relief as follows:

10   **ON THE FIRST CAUSE OF ACTION**

11   1.   For an award of general damages in an amount to be proven at trial;

12   2.   To recover the consideration paid by Plaintiffs for the securities, plus

13   interest at the legal rate, less the amount of any income received on those securities;

14   3.   For an award of punitive or exemplary damages, according to proof at

15   trial;

16   4.   For pre-judgment interest.

17

18   **ON THE SECOND CAUSE OF ACTION**

19   5.   For an award of general damages in an amount to be proven at trial;

20   6.   To recover the consideration paid by Plaintiffs for the securities, plus

21   interest at the legal rate, less the amount of any income received on those securities;

22   7.   For an award of punitive or exemplary damages, according to proof at

23   trial;

24   8.   For pre-judgment interest.

25

26   **ON THE THIRD CAUSE OF ACTION**

27   9.   For an award of general damages in an amount to be proven at trial;

28   10.   To recover the consideration paid by Plaintiffs for the securities, plus

LARSON
LOS ANGELES

interest at the legal rate, less the amount of any income received on those securities;

11.     For an award of punitive or exemplary damages, according to proof at trial;

12.     For pre-judgment interest.

**ON THE FOURTH CAUSE OF ACTION:**

13.     For an award of general damages in an amount to be proven at trial;

14.     To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

15.     For an award of punitive or exemplary damages, according to proof at trial;

16.     For pre-judgment interest.

**ON THE FIFTH CAUSE OF ACTION:**

17.     For an award of general damages in an amount to be proven at trial;

18.     To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

19.     For an award of punitive or exemplary damages, according to proof at trial;

20.     For pre-judgment interest.

**ON THE SIXTH CAUSE OF ACTION:**

21.     For an award of general damages in an amount to be proven at trial;

22.     To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

23.     For an award of punitive or exemplary damages, according to proof at trial;

24.     For pre-judgment interest.

**ON THE SEVENTH CAUSE OF ACTION:**

25.     For an award of general damages in an amount to be proven at trial;

26.     To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

27.     For an award of punitive or exemplary damages, according to proof at trial;

28.     For pre-judgment interest.

**ON THE EIGHTH CAUSE OF ACTION:**

29.     For an award of general damages in an amount to be proven at trial;

30.     To recover the consideration paid by Plaintiffs for the securities, plus interest at the legal rate, less the amount of any income received on those securities;

31.     For an award of punitive or exemplary damages, according to proof at trial;

32.     For pre-judgment interest.

**ON THE NINTH CAUSE OF ACTION**

33.     For an award of general damages in an amount to be proven at trial;

34.     For an award of punitive or exemplary damages, according to proof at trial;

35.     For rescission of the purchase by Plaintiffs of the membership interest in EAGLE NASHVILLE AIRPORT HOTEL, LLC., and [UC ENTITY] purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

36.     For pre-judgment interest.

**ON THE TENTH CAUSE OF ACTION**

37.     For an award of general damages in an amount to be proven at trial;

38.     For an award of punitive or exemplary damages, according to proof at trial;

39.     For rescission of the purchase by Plaintiffs of the membership interest in EAGLE NASHVILLE purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

40.     For pre-judgment interest.

**ON THE ELEVENTH CAUSE OF ACTION**

41.     For an award of general damages in an amount to be proven at trial;

42.     For an award of punitive or exemplary damages, according to proof at trial;

43.     For rescission of the purchase by Plaintiffs of the membership interest in EAGLE NASHVILLE purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

44.     For pre-judgment interest.

**ON THE TWELFTH CAUSE OF ACTION**

45.     For an award of general damages in an amount to be proven at trial;

46.     For an award of punitive or exemplary damages, according to proof at trial;

47.     For rescission of the purchase by Plaintiffs of the membership interest in EAGLE NASHVILLE purchased by Plaintiffs, recovery to Plaintiffs of all of the consideration paid by Plaintiffs for those securities, plus interest at the legal rate, less the amount of any income received on those securities.

48. For pre-judgment interest.

**ON THE THIRTEENTH CAUSE OF ACTION**

49. For an award of general damages in an amount to be proven at trial;

50. For an award equal to three times the amount of actual damages sustained by Plaintiffs;

51. For reasonable attorneys' fees pursuant to Penal Code Section 496(c);

52. For pre-judgment interest.

**ON THE FOURTEENTH CAUSE OF ACTION**

53. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

54. For consequential damages, in an amount according to proof at trial,

55. For an award of punitive or exemplary damages, according to proof at trial;

56. For pre-judgment interest

**ON THE FIFTEENTH CAUSE OF ACTION**

57. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

58. For consequential damages, in an amount according to proof at trial,

59. For an award of punitive or exemplary damages, according to proof at trial;

60. For pre-judgment interest.

**ON THE SIXTEENTH CAUSE OF ACTION**

61. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

62. For consequential damages, in an amount according to proof at trial,

63. For an award of punitive or exemplary damages, according to proof at trial;

64. For pre-judgment interest.

**ON THE SEVENTEENTH CAUSE OF ACTION**

65. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

66. For consequential damages, in an amount according to proof at trial,

67. For an award of punitive or exemplary damages, according to proof at trial;

68. For pre-judgment interest.

**ON THE EIGHTEENTH CAUSE OF ACTION**

69. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

70. For consequential damages, in an amount according to proof at trial,

71. For an award of punitive or exemplary damages, according to proof at trial;

72. For pre-judgment interest.

**ON THE NINETEENTH CAUSE OF ACTION**

73. For restitution of benefits, including the return of Plaintiffs' $13,200,000 investment;

74. For consequential damages, in an amount according to proof at trial,

75. For an award of punitive or exemplary damages, according to proof at trial;

76. For pre-judgment interest.

**ON THE TWENTIETH CAUSE OF ACTION**

77.     For an award of general damages in an amount to be proven at trial;

78.     For an award of punitive or exemplary damages, according to proof at trial;

79.     For pre-judgment interest.


**ON THE TWENTY-FIRST CAUSE OF ACTION**

80.     For restitutionary disgorgement;

81.     For permanent injunctive relief;

82.     For pre-judgment interest.


**FOR ALL CAUSES OF ACTION**

83.     For pre-judgment interest;

84.     For costs of suit incurred herein;

85.     For reasonable attorneys' fees, to the extent allowed by law;

86.     For suitable temporary restraining orders, writs of attachment, expedited discovery orders, turnover orders, and preliminary injunctions, as necessary to prevent Defendants from causing additional harm to Plaintiffs and to prevent the dissipation of assets and to ensure that a judgment can be satisfied; and

87.     For such other and further relief as the Court may deem just and proper.

Dated:  January 24, 2024          LARSON LLP


By:   */s/ Stephen G. Larson*
Stephen G. Larson
Paul A. Rigali
Alix K. Zelener
- and -
Howard M. Zelener
Attorneys for Plaintiffs
ALEX KNOWLES, A WAY TO MOVE, INC.,
JOHN BIDART, BIDART DAIRY II, LLC,
BRUCE BERETTA, SITKA ENTERPRISES,
LLC, RENTAS E INVERSIONES LOS
OLIVOS, LTDA., NIULPI INTERNATIONAL
SPA, INVERSIONES BARAJA Y
COMPAÑIA SOCIEDAD COLECTIVA
CIVIL, and LINK NASHVILLE AIRPORT
HOTEL, INC.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury.

Dated:  January 24, 2024          LARSON LLP


                               By:  */s/ Stephen G. Larson*
                                    Stephen G. Larson
                                    Paul A. Rigali
                                    Alix K. Zelener
                                     - and -
                                    Howard M. Zelener

                                    Attorneys for Plaintiffs
                                    ALEX KNOWLES, A WAY TO MOVE, INC.,
                                    JOHN BIDART, BIDART DAIRY II, LLC,
                                    BRUCE BERETTA, SITKA ENTERPRISES,
                                    LLC, RENTAS E INVERSIONES LOS
                                    OLIVOS, LTDA., NIULPI INTERNATIONAL
                                    SPA, INVERSIONES BARAJA Y
                                    COMPAÑIA SOCIEDAD COLECTIVA
                                    CIVIL, and LINK NASHVILLE AIRPORT
                                    HOTEL, INC.